## McClurken's Appeal.

*Construction of will.—Legacy charged on life estate, and not on remainder, devised iu fee.*

Where lands were given by will to trustees, in trust to permit the testator's son to receive the rents, issues, and profits during his natural life, "for *the support of himself and family,*" without being subject to the power and control of his creditors, but subject to the payment of $7000 of said rents, &c., in annual instalments of $1000, with power to make improvements and manage the property, followed by a devise to his grandson in fee: *Held,* that the sum of $7000 was a charge only on the life estate, and not on the remainder.

APPEAL from the District Court of *Allegheny county*. In Equity.

This was a proceeding in the court below, founded on a bill in equity, filed by Samuel McClurken against Daniel Negley, Duncan Hamilton, and William Young, trustees under the will of John McMasters, Sr.

The said trustees, in their answer, having denied the receipt of any money under the said will, an amended bill was 'filed against William G. Hawkins, the guardian of John McMasters the younger.

· The bill, as amended, set forth that "John McMasters, the elder, who was scised and possessed of considerable real and personal estate, by his last will and testament, bearing date the 13th day of March 1847, duly proved and recorded, devised to Daniel Negley, Duncan Hamilton, and William Young, merchant, three of the respondents, and the survivors and survivor of them and their heirs, all his interest and estate in possession or remainder in the Hazlett property, at the Two-Mile Run, in Allegheny county, and also in the tavern stand, and yard, and blacksmith shop, and wagon-maker shop, in the city of Pittsburgh, on which his son then resided, in trust for the uses and purposes in said will mentioned; and that testator died in the month of April 1847.

That by the provisions of said will said trustees were directed to permit and allow John McMasters, Jr., to receive the rents, issues, and profits thereof during his natural life, for his own and for his family's support, without being subject to the power and control of his creditors, but subject to the payment of $7000, with its interest, to William Larimer, the son-in-law of the testator, it being a debt which John McMasters, Jr., owed to said William Larimer, Jr., to be paid, as declared in said will, by the testator's devisees and trustees and John McMasters, Jr., out of the rents, issues, and profits of said estate, in annual instalments of $1000 each, the first to be paid at the expiration of one year after the testator's death.

[McClurken's Appeal.]

That by a further clause in said will, said trustees were to permit John McMasters, Jr., to make such improvements on said property as he might think proper, giving him power to manage said property, and to receive the rents for the uses and purposes aforesaid.

That said John McMasters, Jr., during his life, was permitted by said trustees and did receive the rents, issues, and profits of said property for his own and his family's support, and made permanent improvements on the property out of the rents, issues, and profits, amounting in value to $10,000, by which it was greatly increased in value, and the rents thereof increased $1500 per annum.

That said property, before making said improvements, was in a dilapidated condition, and the rents, issues, and profits thereof not more than sufficient to support the said John and his family.

That said John McMasters, Jr., died about the year 1858, insolvent, without having applied any portion of the rents, issues, and profits to payment of the debt of William Larimer, Jr.; and that the only payment made on account of said debt appears on Exhibit B., amounting, with interest on the 1st October 1864, to $3339.65, but from what source the money wherewith it was paid was derived complainant has no knowledge, except as set forth in said exhibit.

That said John McMasters the younger, upon the death of his father, John McMasters, Jr., entered by his guardian, William G. Hawkins, into possession of said property, and from that time to the filing this bill has received the rents, issues, and profits thereof, amounting to about $3000 per annum; but has refused to apply any portion thereof to the payment of said debt, and pretends that the said property, under the provisions of said will, was devised to him free and discharged therefrom, and that said debt is not a charge thereon.

Complainant then charged that said debt is now, and by the terms of said will was made a charge upon said real estate; and prayed that John McMasters the younger, by his guardian, William G. Hawkins, may be compelled to render an account of the rents, issues, and profits received by him from said real estate since the death of John McMasters, Jr., and be compelled to pay over the same, or so much thereof as may be required to pay said debt and interest; or in case the said rents, issues, and profits so received do not amount to enough to satisfy said debt and interest, that the court may decree that the aforesaid claim be a charge upon the real estate aforesaid, from the time of the death of the said John McMasters, Sr., and so remain until the same is satisfied; and that complainant may have such further relief as the circumstances of the case may require.

The clause in the will of John McMasters, Sr., on which this case turned, is as follows :—

"Second. I bequeath to my son John the sum of $100. And I devise to Daniel Negley, Duncan Hamilton, and William Young, merchant, and the survivor or survivors of them, and their heirs, all my interest and estate in possession or remainder, in the Hazlett property, at the Two-Mile Run, by me purchased of William Hazlett. Also, all that tavern stand and yard, and blacksmith shop, and wagonmaker shop, in the city of Pittsburgh, on which property my son John now resides. Said tavern property to commence on Virgin alley, ninety feet from the corner of Alexander McClurg's property on Virgin alley, and thence in a direct line from Virgin alley to the large corner-post at Greer's corner, at the opening into Liberty street, and including all the ground and buildings between that line and Seventh street, usually rented with and occupied by the tavern, to have and to hold to them as aforesaid, and for their use in trust, nevertheless, and special confidence, for the following recited uses and purposes, and not otherwise, viz.: To permit and allow my son John to have and receive the rents, issues, and profits thereof during his natural life, for his own and his family's support, without being subject to the power or control of his creditors, subject, however, to the payment of the sum of $7000, with its interest, to William Larimer, Jr., being a debt which my son John owes to him, and to be paid by my said trustees and my son John, out of said rents, issues, and profits, in annual instalments of $1000 each, the first instalment to be paid at the expiration of one year after my decease.

"And further, to allow and permit my son John to make such improvements as he may think proper, giving my said son power to manage said property, and to receive the rents for the uses and purposes aforesaid; and in case on partition of said Hazlett property not being made, the same shall be sold, then my share of the proceeds of such sale is to be applied to the improvement of the tavern property, or the purchase of other property to be held in trust as aforesaid, for the same uses and purposes as the tavern property aforesaid. And on the decease of my said son John, I devise said property to his son John, and his heirs and assigns for ever: and provided my said grandson should die under the age of twenty-one, and without issue, then I devise the same to any other son of my said son John, bearing the same name. And provided my son John leaves no son of that name, I give him power to devise said property, by last will and testament, as he shall see proper. And in case he shall die intestate, making no will, and without a son bearing his name, I devise the property aforesaid to his heirs generally, making no distinction."

To this bill the respondent filed the following demurrer :—

[McClurken's Appeal.]

The said William J. Hawkins, guardian and trustee of John McMasters, Jr., for himself and the said John McMasters, Jr., by Charles Shaler, his attorney, demurs to the said bill, because he says the said complainant seeks to charge the ward of this defendant as the devisee of John McMasters, the testator in the said bill named, under whose will, as the complainant alleges, the estate of the said John McMasters, Jr., became charged with the same. But it does not appear by the said bill that the said John McMasters, Jr., as such devisee, is bound in, by, or under the said devise to pay or discharge said debt, or that the same is a charge upon the estate of the said devisee, under and by the will of John McMasters, the testator. And for further cause alleges that the said complainant has not, by his said bill, made or stated such a case as doth or ought to entitle him to any such recovery or relief as is thereby sought and prayed for, from, or against this defendant.

And for further ground of demurrer to complainant's bill, alleges that the said complainant is not entitled to the prayer of the said bill, because he says that if the facts, circumstances, and documents be properly averred, the District Court has no jurisdiction over the subject-matter of complaint, but that the same is vested in the Orphans' Court of Allegheny county.

The court below, on hearing the case, sustained the demurrer and dismissed the bill, at the costs of the complainant.

*N. P. Fetterman* and *S. A. Purviance*, for appellant.—The main and indeed only question argued and decided below was, whether John McMasters, Jr., upon the death of his father, held the property discharged of the lien of Larimer's debt. We contend that, by a fair and liberal construction of the will, he can only take subject to the payment of this debt.

Mrs. Larimer was the daughter of the testator, and it is obvious the security of this debt was intended for her upon this property. The property becoming valuable, the testator did not intend John McMasters, Jr., should be the owner of it, except upon the condition that he paid the $7000 to Mrs. Larimer, or to her use. The debt was just; the old man knew it and intended to secure it; but John—the father of John, Jr.—was to have the entire management of the rents and profits for his and his family's support. He applied the rents in this way, and in the improvement of the property. He, out of the rents, supported this boy in his minority, and improved the property so as to increase the rents when the property came into the young man's hands. Is there any equity now in his repudiating this debt, and does it not follow the land in his hands?

The court below seemed to think Larimer might have gone into court and taken the rents from John's support. This would

have been a clear violation of the intention of the testator. John was hopelessly insolvent, and dependent upon the bounty of his father. To require the payment of Larimer's debt out of the rents would have turned John and family out of house and home; besides, John had the control of these, and was the judge of what was necessary for this support.

The devise is made to the trustees, who, it is conceded in the argument and by the court, have the fee simple in trust for payment of this debt. A devise to trustees and their heirs for life of certain persons, remainder over, the fee passes unless contrary intent be clearly manifested: 13 E. C. L. Rep. 213. Was it intended by the testator that if John, the son, had died in a month after making the will, that John, the grandson, should have the property discharged of the debt? And yet this would be the case if the position of appellees be correct. In such a case would not the fee still remain with the trustees until the purpose of the trust should be fully discharged? and was not that the intention of the testator?

To show that Larimer had a lien upon the lands, we say he might have obtained an order for the sale of part of it to pay the debt; and that, if this could be done, the land continues chargeable until the debt be paid, no matter into whose hands or possession it may fall. The trustees holding the legal title, and having the right to call for a sale of a part of the property, could maintain ejectment against John McMasters, the grandson, and oust him unless he should pay the money in dispute.

In Gibson v. Lord Montford, 1 Ves. 485, property given to trustees to pay legacies out of rents, issues, and profits arising by the real estate, Lord Hardwicke ruled that, as the legacies could not be satisfied out of the annual profits, they must be raised by a sale of the real estate, for which purpose the trustee must take the legal inheritance.

Again: And though the trust is to raise the portions by means of the rents and profits, yet if a particular time be fixed for the payment of the whole amount, that will be considered inconsistent with the intention that the sum should be raised only by the gradual perception or the annual income, and a sale will be directed: 2 Vernon 310; 1 Chan. Cases 175; 1 Atkinson 551. Here time was fixed; and besides, the trustees were trammelled by John's right to handle and appropriate the funds. They could therefore ask the court to sell; and John, the grandson, in equity should not be allowed to gainsay it.

The trust in this case was of a very peculiar character. John during his natural life was to receive the profits for himself and family, not subject to his debts, but subject to the payment of this debt in annual instalments of $1000 a year, and at the same time allowing John to make such improvements as he thought proper.

[McClurken's Appeal.]

John, as the bill shows, consumed the whole in his and his family's support, and improvements made; and no court could have decreed the payment of this debt out of the rents, and thus deprived John of a support. The trust being for the use of·· John and his family, subject to the payment of this debt, devolves it upon the grandson in equity, as he gets the property out of which it is to be paid. This grandson's support was as much provided for as that of his father's, and the payment of the debt was to be subject to his support. Can he, with any equity, say that because he consumed the rents in his support, and in the improvement of the property whereby the rents are increased, that he gets it discharged of this lien? We ask for no decree that will in the least disturb the harmony of the will; but that John McMasters, the grandson, be required to pay in instalments, which will not in any way infringe upon his living—which, we believe, was evidently the intention of the testator.

*Shaler, Kirkpatrick & Mellon*, for defendant in error.

The opinion of the court was delivered, November 3d 1864, by Strong, J.—We cannot adopt that construction of the will of John McMasters, Sr., for which the complainant contends. It is too plain for controversy that the legacy given to William Larimer, Jr., was charged exclusively upon those rents, issues, and profits of the land devised to John McMasters the second, which might accrue during his life. Neither expressly nor by any possible implication was it charged upon the fee devised in remainder to the defendant, John McMasters the third. The will gave the lands to trustees named to hold in trust to permit the testator's son John to have and receive the rents, issues, and profits thereof during his natural life, for his own and his family's support, without being subject to the power or control of his creditors, subject, however, to the payment of the sum of $7000, with its interest, to William Larimer, Jr., it being a debt due from the testator's son John to Larimer. The will then directed that this debt of $7000 should be paid by his said trustees and his son John out of the said rents, issues, and profits, in annual instalments of $1000 each, the first instalment to be paid at the expiration of one year after the testator's decease. The devise was in further trust to permit John, the son, to make such improvements as he might think proper, giving him power to manage the property, and to receive the rents for the uses and purposes aforesaid. The testator then devised the remainder, after the death of his son John, to John McMasters the third, the defendant, in fee simple. The legacy having been thus charged expressly upon the rents, issues, and profits of the life estate given to the first devisee, there is no room for an implication of

[McClurken's Appeal.]

a charge upon the remainder. Even more, if there were any room for it, any implication of a charge would be repelled by what is expressed. It has been insisted by the appellant that the payment of the legacy was made subordinate to the support of John, the son of the testator, and to that of his family, and to the cost of the improvements which he might think proper to put upon the lands. Hence it is inferred that if the rents were not more than sufficient to support the devisee for life and his family, and also to make the improvements which he chose to make, the legacy must be payable out of another fund; that is, out of the remainder devised to John McMasters the third. Neither this conclusion nor the premises upon which it is based can be maintained. Both are directly in conflict with the directions of the will. What was given to John the second, for his support and for improvements, was the rents, issues, and profits, subject to the payment of the legacy. It was not the legacy which was made servient, but the support and the improvements were directed to be secondary. Probably it was expected that the fund would prove sufficient for both. But every disposition which the testator made relative to the rents that might accrue during the continuance of the particular estate of his son, shows that only what should be left after meeting the claims of the legatee was given to the son. Thus the legacy was ordered to be paid in annual instalments of $1000 each, the first one year after the testator's death. How was it possible to meet this order if John the second had a right to appropriate the whole fund to his support, and to such improvements as he might choose to make? Undoubtedly the testator was not unmindful of his son's necessities, and hence instead of making the whole legacy payable at once, he directed its payment in annual gales. But fixing the times of payment is irreconcilable with the position that either improvements or the support of the devisee for life were superior to the rights of the legatee; and the complainant's bill shows that the fund, made subject to the payment of the legacy, was more than sufficient to pay it. The testator died in 1847, and the devisee for life in 1858, eleven years thereafter. During all those years the rents were applied to the support of the devisee and his family, besides $10,000 expended in improvements. It was a misapplication, but it will not justify a resort to the remainder devised to the defendant, upon which the legacy was not charged. The legatee can look only to the estate of John McMasters, Jr. For these reasons the court was right in sustaining the demurrer, and dismissing the bill as against the demurrants.

We need not therefore consider the other question raised by the demurrer, namely, the jurisdiction of the court.

The bill as against the trustees was abandoned.

The decree of the District Court is affirmed with costs.